IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
GENERAL CIVIL LAW DIVISION

ROBERT D. THOMPSON,

    Plaintiff,

vs.

                                     CASE NO.:

AMERICAN   SERVICE   INSURANCE
COMPANY,

    Defendant.

_____/

CASE NO.:

DIVISION: 10   02610

DIVISION C

RECEIVED

FEB 04 2010

CLERK OF CIRCUIT COURT
HILLSBOROUGH COUNTY, FL

## COMPLAINT

Plaintiff, ROBERT THOMPSON, by and through his undersigned attorney,

hereby files this Complaint against Defendant, AMERICAN SERVICE INSURANCE

COMPANY, and alleges the following:

1.    This is an action for damages exceeding FIFTEEN THOUSAND

($15,000) DOLLARS, excluding costs, interest, and attorney's fees.

2.    At all material times Plaintiff, ROBERT THOMPSON (hereinafter

"THOMPSON"), was and is a resident of Thontosassa, Hillsborough County, Florida.

3.    At all material times, the Defendant, AMERICAN SERVICE

INSURANCE COMPANY (hereinafter "ASI"), a foreign corporation for profit, was

engaged in the business of issuing policies of insurance in the State of Florida and

handling claims in the State of Florida.

4.    ASI issued an automobile insurance policy in Florida, Policy

No.331400000796-1, to Karen L. Watson (hereinafter the "insured"), containing liability

insurance limits of $10,000 per person. A copy of ASI Policy No. 331400000796-1 is attached hereto as "Exhibit A."

5.     On July 5, 2007, while the above-referenced contract of insurance was in full force and effect, the insured, while voluntarily intoxicated, was involved in an automobile accident in Hillsborough County, Florida, wherein her vehicle collided into a motorcycle being driven by THOMPSON. As a result of the collision, THOMPSON suffered permanent bodily injuries and damages.

6.     ASI was timely notified about the claim.

7.     At all material times, ASI had sufficient information about the liability and the catastrophic injuries and damages sustained by THOMPSON.

8.     ASI failed to timely settle THOMPSON'S claim against its insured, even though it knew, or should have known, that it was a case of the insured's liability and that the catastrophic damages sustained by THOMPSON greatly exceeded the policy limits.

9.     As a result of ASI'S failure to settle the claim when it could and should have done so, THOMPSON filed suit against the insured.

10.    ASI failed to settle THOMPSON'S claim and protect its insured when it could have and should have done so.

11.    On December 8, 2009, a final judgment was entered against the insured and in favor of THOMPSON in an amount of $811,533.45 plus statutory interest, far in excess of the policy limits. A true and correct copy of the Final Judgment is attached hereto as "Exhibit B."

2

12.   Had ASI timely tendered the $10,000 policy limits, THOMPSON would have accepted the policy limits and given the insured a release and there never would have been a final judgment entered against the insured.

## COUNT I COMMON LAW BAD FAITH

13.   THOMPSON realleges and reasserts the allegations of paragraphs 1 through 12 as if fully set forth herein.

14.   ASI knew or should have known facts that were sufficiently certain as to the insured's liability such that it was probable that a verdict and judgment in favor of THOMPSON would be entered against the insured if the claim was not settled by ASI.

15.   By virtue of the insurance contract, ASI and its employees and agents had a duty to use due care in the investigation and in the handling of the claims and in evaluation of the claims for settlement purposes, and a duty to act in good faith and to give due consideration to the interests of the insured in the negotiation and settlement of the claims and in consideration of settlement offers.

16.   The aforementioned duty required ASI to consider all of the circumstances of the claim and to settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

17.   ASI further was obligated to advise its insured of settlement opportunities, to advise as to the probable outcome of litigation, to warn of the possibility of an excess judgment, and to advise of any steps for the insured to avoid the same.

18.   ASI knew or should have known that the injuries sustained by THOMPSON were substantial and that if the case was not settled, it would result in a

verdict and judgment in favor of THOMPSON and against the insured in an amount far in excess of the Policy limits.

19.   ASI acted in bad faith in that, under all the circumstances, it acted in its own interests and disregarded the interests of its insured by:

a.   Failing to accept a reasonable offer and opportunity to settle this case within policy limits when it could and should have done so, had it considered the claim as a reasonably prudent person would have, if faced with the prospect of paying the entire recovery;

b.   Failing to accept a reasonable settlement offer and opportunity to settle this case within policy limits when, under all the circumstances, it could and should have done so had it acted fairly and honestly toward its insured and with due regard for its insured's interests;

c.   Failing to exercise reasonable care and good faith in the investigation, negotiation, and attempted settlement of the claim made against its insured;

d.   Failing to advise its insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps she might take to avoid the same; and/or

e.   Failing to provide adequate training, education, and supervision to its employees as it relates to the proper handling, adjusting, and settlement of claims such as those asserted by THOMPSON against the insured.

20.   As result of ASI's breaches of its duties of good faith, and its failure to settle THOMPSON's claim against the insured, a final judgment far in excess of the policy limits was entered against the insured.

21.   THOMPSON is entitled to recover damages against ASI as a result of the aforementioned bad faith.

WHEREFORE, for the foregoing reasons, Plaintiff ROBERT THOMPSON demands judgment against ASI in the amount of the state court judgment, together with interest from the date of entry, and such other and further relief as this Court may deem just and proper.

## COUNT II STATUTORY BAD FAITH

22.    THOMPSON realleges and reasserts the allegations of paragraphs 1 through 12 as if fully set forth herein.

23.    This is a claim for damages for statutory bad faith against ASI pursuant to Fla. Stat. §624.155.

24.    All conditions precedent to bringing this claim have been met.

25.    On May 20, 2008, pursuant to §624.155(3), Florida Statutes, THOMPSON filed a Civil Remedy Notice against ASI that provided notice of ASI's violations of its statutory duties as set forth in §624.155(1)(b).   A true and correct copy is attached hereto as "Exhibit C."

26.    ASI did not pay the damages or correct the circumstances giving rise to the violations of its statutory duties within 60 days after THOMPSON filed his Civil Remedy Notice.

27.    ASI, pursuant to Fla. Stat. § 624.155(1)(b), had a duty to attempt in good faith to settle the claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her interests.

28.    ASI failed to fully proactively and timely investigate THOMPSON'S claim against the insured and make available its applicable liability limits to settle the claim when it could and should have done so.

29.    ASI also breached its duty owed pursuant to Fla. Stat. §624.155(b)(2) to make claims payments to the insureds or beneficiaries accompanied by a statement setting forth the coverage under which the payments were being made.

30.   Moreover, ASI, pursuant to Fla. Stat. §626.9541, also had the duty not to engage in unfair and deceptive business practices.

31.   ASI breached the aforesaid duty by failing to have in place procedures for the proper and accurate investigation, evaluation, and resolution of claims against its insureds, and engaged in improper business practices in violation of:

   a.   §626.9541(1)(i)(3)(a) failing to adopt and implement the proper standards for the proper investigation of claims

   b.   §626.954(1)(i)(3)(b) misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue

   c.   §626.954(1)(i)(3)(c) failing to acknowledge and act promptly upon communications with respect to claims

   d.   §626.9541(1)(i)(3)(d) denying claims without conducting reasonable investigations based upon available information

   e.   §626.954(1)(i)(3)(e) failing to affirm or deny full or partial coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed

   f.   §626.954(1)(i)(3)(f) failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement

   g.   §626.954(1)(i)(3)(g) failing to promptly notify the insured of any additional information necessary for the processing of a claim

   h.   §626.954(1)(i)(3)(h) failing to clearly explain the nature of the requested information and the reasons why such information is necessary

32.   As result of ASI's breaches of its statutory duties of good faith and fair dealing, and its failure to settle THOMPSON's claim against the insured, a final judgment far in excess of the policy limits was entered against the insured.

33.   Thompson has retained the undersigned attorneys to prosecute his rights asserted herein and is obligated to pay a reasonable attorney's fee.

   **WHEREFORE**, Plaintiff ROBERT THOMPSON demands judgment against the Defendant, ASI, for damages including but not limited to the amount of the state court

judgment, together with interest from the date of entry, costs, attorney's fees pursuant to

Section 624.155(4), Florida Statutes, and such other and further relief as this Court may

deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, ROBERT THOMPSON, hereby demands Trial by Jury on all issues so

triable.

Respectfully submitted,

LEE D. GUNN IV, ESQ.
Florida Bar No.: 367192
GUNN LAW GROUP, P.A.
400 North Ashley Drive, Suite 2050
Tampa, FL 33602
(813) 228-7070 TELEPHONE
(813) 228-9400 FACSIMILE
LGUNN@GUNNLAWGROUP.COM
Counsel for Plaintiff



American Service Insurance
150 Northwest Point Blvd.
Elk Grove Village, IL 60007-1018
WWW.ASILINK.COM

06/27/2007

New Business
DECLARATIONS

Named Insured and Address:
KAREN WATSON

Policy Number: 331400000796-1

Policy Period: From 06/23/2007 To 12/23/2007
12:01 a.m. standard time at the address of the Named Insured
as stated herein, unless otherwise stated on the application.

Producer: 40125
Trust Insurance Agency
3905 W Kennedy Blvd
Tampa, FL 33609-2721
(813) 877-8203

**Schedule of Drivers**

| Name | Driver's License | State | Date of Birth | Points | SR22 | Sex | Marital Status |
|------|------------------|-------|---------------|--------|------|-----|----------------|
| KAREN WATSON | W325512655610 | FL | 02/21/1965 | 0 | N | F | M |
| TIMOUR KHOUSSAINOV | Excluded | | | | | M | M |

**Schedule of Insured Vehicles**

| Veh # | Year | Make | Model | VIN | Class | Symbol | Territory | Points | Premium |
|-------|------|------|-------|-----|-------|--------|-----------|--------|---------|
| 1 | 2001 | Nissan | MAXIMA GXE/SE/SE | 2JN1CA31D71T817692 | B5 | 15 | 7 | 0/0 | $807.00 |

Loss Payee: SUNCOAST SCHOOLS FDCU    PO Box 11769 Tampa, FL 33680-1769

If you have any questions regarding this notice please contact your producer listed above. We thank you for your business.

*Veronica Maldonado*, certify that this is a true and
correct copy of policy number _33 14 00000796-1_
that was issued to _Karen Watson_,
consisting of the Policy Jacket, reprinted copies of the
Declarations Pages, and any applicable Endorsements.

AMERICAN SERVICE INSURANCE COMPANY

By _____

Underwriter

*EXHIBIT A*

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS PURSUANT TO 45 CFR 164.508 (HIPAA)
Patient Name:                                         Social Security #:
Date Of Birth:      /     /          Date of Injury/Onset of Illness:       /     /      Claim: 33CAFL07008425

TO: Any physician, surgeon, dentist, hospital, rehabilitation/convalescent/custodial facility, pharmacist, ambulance, nurse, other
health care provider or insurance company.

I,            , authorize you to disclose and release the following protected health information: Any and all inpatient admissions, all
ER visits, outpatient clinic notes, diagnostic testing, radiology films, consults, doctors orders, progress notes, nurses
notes, laboratory testing, social service records, reports, correspondence, consultations, memoranda, treatment plans,
admission records, discharge summaries, medical summaries, diagnoses, and/or any writing of any kind.

Also, please disclose and release the following protected health care information (only if checked below):
o Drug and Alcohol Records    o Communicable disease, HIV and AIDS Records
o Mental Health Records (not including Psychotherapy Notes)
This protected health information is disclosed for the following purposes: verifying, evaluating, negotiating and or other pertinent
legal uses, with respect to the patient's insurance claim.

You are authorized to release the above records, or copies thereof, to any representative of American Service Ins. Co. at the
following address: American Service Insurance Company  150 Northwest Point Boulevard, Elk Grove Village, IL 60007.

I further authorize any health care provider to release any and all tests, reports, notes (excluding psychotherapy notes) and all other
information concerning my medical and/or psychological conditions and/or treatment and to meet with, discuss and/or to correspond
and report directly to American Service Ins. Co. or any representative(s) of American Service Ins. Co. may designate to discuss my
medical and/or psychological condition(s) or treatment.

I also authorize the provider of treatment to: 1) communicate directly with my employer, American Service Ins. Co. and/or its
representatives on his/her own initiative, if necessary, concerning my medical and/or psychological condition(s) and/or treatment;
and 2) consult with my employer, American Service Ins. Co., and/or its representatives upon request provided that the responsibility
for any charges for such consultation will be solely with the requesting party of the consultation. I expressly waive any and all rights
that I may have to be notified of these communications and to be present at consultations.

The purpose of such communications, correspondence, consultations and meetings is the same as set forth above with respect to
my authorization for the disclosure of protected health information.

This authorization shall be in force and effect until the later of one year from the date signed or the date the claim has been legally
concluded at which time this authorization expires.

I have the right to revoke this authorization, in writing, by sending written notification to you with copy to American Service Ins. Co.
at the above address. I understand that a revocation is not effective to the extent that you have relied on my authorization to
disclose protected health information.

I acknowledge that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and
no longer be protected by Subpart E of the Regulations promulgated by the U.S. Department of Health and Human Services
pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") relating to the privacy of individually
identifiable health information.

I further agree that a photocopy or facsimile copy of this Authorization shall be valid and effective just as the original.

I understand that I have the right to: 1) inspect or copy the individually identifiable health information to be disclosed; 2) refuse to
sign this authorization; 3) receive a copy of this Authorization upon request.

_____              _____
Signature of Patient or Personal Representative        Name of Patient or Personal Representative

_____/_____/_____                              _____
Dated                                          Description of Personal Representative's Authority to Sign

Schedule of Coverages

This Policy: 3314000007961, provides only those coverages where a charge is shown in the premium column below.

Producer: 40125

Vehicle No. 1

| Coverage | | Limit | Deductible | Premium |
|---|---|---|---|---|
| Bodily Injury Liability | each person | 10,000 | 0 | 168.00 |
| | each accident | 20,000 | 0 | INCL. |
| Property Damage Liability | each accident | 10,000 | 0 | 121.00 |
| Personal Effects | each accident | 0 | 0 | 0.00 |
| Medical Payments | each person | 0 | 0 | 0.00 |
| Personal Injury Protection ** | | 10,000 | 1,000 | 168.00 |
| Uninsured Motorist - Rejected | | 0 | 0 | 0.00 |
| Comprehensive* | less deductible | 0 | 500 | 85.00 |
| Collision* | less deductible | 0 | 500 | 265.00 |
| Towing | per disablement | 0 | 0 | 0.00 |
| Rental*** | Per day | 0 | 0 | 0.00 |

\* Actual Cash Value less deductible not to exceed $40,000

\** PIP Deductible applies to Named Insured and Dependent Relatives.

\*\*\*Rental maximum number of days: 0

Form Numbers of Endorsements attached to Policy at issue: Florida Private Passenger Auto Policy, ASI-1002 (02/05)

Discounts/Surcharges included in the premium for some or all of the vehicles on this policy: AIR-BAG BOTH, ANTI-LOCK BRAKES, ANTI-THEFT

Tier: D3  Program: Peninsula  Rate Table: 5802

| | |
|---|---|
| Sub-Total: | $807.00 |
| SR22 Fee: | $0.00 |
| Install. Plan Processing Fee: | $10.00 |
| FL Hurricane CAT Fee: | $8.07 |
| TOTAL PREMIUM: | $825.07 |

intentionally concealed any information in connection with any accident or loss for which coverage is sought under this policy. Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

1.  at any time application is made; or
2.  at any time during the policy period; or
3.  in connection with the presentation or settlement of a claim.

By accepting this policy, you agree that:

1.  the statements in your application and in the declarations are your agreement and representations; and
2.  this policy is issued in reliance upon the truth of these representations; and
3.  this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

TERMS OF POLICY CONFORMED TO STATUTES

If any terms of this policy are in conflict with the statutes of Florida, we will amend this policy to conform to those statutes.
In Witness Whereof, this Company has caused this policy to be signed, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

*Thomas R. Ossmann*

Thomas R. Ossmann, President & CEO



AMERICAN SERVICE

INSURANCE COMPANY

IF YOU HAVE ANY QUESTIONS
ABOUT YOUR POLICY,
PLEASE CONTACT OUR CUSTOMER
SERVICE UNIT

(800) 897-2551 (OPTION 2)

FLA. STATUTE 626.989 PROVIDES IMMUNITY FOR REPORTING PERSONS SUSPECTED OF ENGAGING IN INSURANCE FRAUD.

21

ASI-1002 (03/06)

YOUR PERSONAL AUTO POLICY
QUICK REFERENCE

Beginning

on Page

DEFINITIONS  1

PART A  Liability Coverage  3
Supplementary Payments  3
Exclusions  3
Limit of Liability  4
Financial Responsibility  4
Other Insurance  5
Nonjoinder of Insurer  5
Policy Limits Out of State  5

PART B  Medical Payments Coverage  5
Exclusions  5
Limit of Liability  6
Other Insurance  6

PART C  Uninsured Motorists Coverage  6
Insuring Agreement  7
Exclusions  8
Limit of Liability  9
Other Insurance  9
Disputes Concerning Uninsured
Motorist Claims  9
Arbitration  9

PART D  Coverage for Damage to your Auto  9
Transportation Expenses  10
Exclusions  10
Emergency Towing and Rental
Reimbursement Coverage  12
Limit of Liability  12
Payment of Loss  12
No Benefit to Bailee  12
Loss Payee Agreement  13
Other Insurance  13
Appraisal  13

Section I  Personal Injury Protection  13
Additional Definitions Under
Section I  13
Exclusions  14
Limits of Liability  14
Unreasonable or Unnecessary
Medical Expenses  15
Action Against Our Company  15
Proof of Claim  15
Reimbursement and Subrogation  15
Conditions  16
Special Provision for Rented
Or Leased Vehicles  16

Section II  Modification of Policy Coverage  16

Section III  Provisional Premium  16

Section IV  Arbitration  16
PART E  Duties after an Accident or Loss  17

required renewal or continuation premium when due, shall mean that you have not accepted our offer.

If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the new insurance.

Other Termination Provisions

1. We may deliver any notice, instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled by you and you are entitled to a premium refund, we will mail the refund of premium to you, within 30 days after the effective date of the policy cancellation or receipt of notice or request for cancellation, whichever is later. If this policy is cancelled by us and you are entitled to a premium refund, we will mail the refund of premium to you within 15 days after the effective date of the policy cancellation. The premium refund, if any, will be computed on a pro rata basis. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

8. TWO OR MORE AUTOS INSURED
If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

a. This provision does not apply to Uninsured Motorists Coverage; and

b. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorist coverage.

9. MEDIATION OF CLAIMS
In any claim filed with an insurer for personal injury in an amount of $10,000 or less or a claim for property damage in any amount arising out of the ownership, operation, use or maintenance of a motor vehicle, either party may demand mediation of the claim prior to the institution of litigation. The provisions of Section 627.745, Florida Statutes, will apply.

10. BANKRUPTCY
Bankruptcy or insolvency of the covered person shall not relieve us of any obligations under this policy.

11. DECLARATIONS
By acceptance of this policy you agree:

a. The statements in the Declarations are your representations;

b. This policy is issued in reliance upon the truth of those representations; and

c. This policy embodies all agreements existing between you and us or any of our agents relating to this policy.

When state law requires us to provide the peril of fire on a particular coverage, we will comply, but only to the minimal extent required by law. In the event this policy, including any and all endorsements, has an exclusion for war applicable to a coverage in question, the definition of War found in that endorsement will be used in place of the other definition of war.

In the event that any portion of this endorsement is to be invalid or unenforceable, the remainder shall remain in full force and effect.

12. FRAUD
We do not provide coverage for any insured or Person seeking coverage who has made fraudulent statements, engaged in fraudulent conduct, or

20

2. If this policy is a new policy and it has been in effect for less than two months, we may cancel for reasons other than non-payment of premium, however, we may cancel for non-payment of premium if the reason for the cancellation is the issuance of a check for the premium, which is dishonored for any reason.

3. In the event we determine that you have been charged an incorrect premium for coverage requested in your application for insurance, we shall immediately mail you notice of any additional premium due us, if within 15 days of the notice of additional premium due (or longer time period as specified in the notice), you fail to either:
   a. Pay the additional premium and maintain this policy in full force under its original terms; or
   b. Cancel this policy and demand a refund of any unearned premium.
      Then this policy shall be cancelled effective 15 days from the date of the notice (or longer time period as specified in the notice).

4. After two months from the inception date or if this is a renewal or continuation policy, we will cancel only:
   a. For non-payment of premium or
   b. If your driver's license and registration or that of:
      1. Any driver who lives with you; or
      2. Any driver who customarily uses your covered auto, whose license and registration has been previously suspended or revoked. This must have occurred (1) during the policy period; or (2) the 180 days immediately preceding the inception date.

5. After this policy has been in effect for two months:
   a. The Named Insured shown in the Declarations may cancel by:
      1. Returning this policy to us; or
      2. Giving us advance written notice of the date cancellation is to take effect.
   b. We may cancel by mailing by registered or certified mail or United States Post Office proof of mailing to the Named Insured shown in the Declarations at the address shown in the policy:
      1. At least 10 days notice if cancellation is for non-payment of premium; or
      2. At least 45 days notice in all other cases.

6. Notwithstanding Sections 1, 2 or 5, we shall cancel this policy at any time for:
   a. Non-payment of premium after the first sixty (60) days pursuant to Section 627.7295; or
   b. Material misrepresentation or fraud.

7. An amount equal to two (2) months premium must be collected from the insured or agent to issue a binder or policy. This provision does not apply if an insured or member of the insured's family is renewing or replacing a policy or binder for such policy written by the same insurer or a member of the same group.

**Non-Renewal:** If we decide not to renew or continue this policy, we will mail notice by registered or certified mail or United States Post Office proof of mailing to the Named Insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 45 days before the end of the policy period.

**Automatic Termination:** If we offer to renew or continue and you or your representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the

**PART F**

| Miscellaneous Provisions | 17 |
| Policy Period and Territory | 17 |
| Changes | 18 |
| Legal Action Against Us | 18 |
| Our Right to Recompute Premium | 18 |
| Transfer of Your Interest in this Policy | 18 |
| Our Right to Recover Payment | 18 |
| Termination | 18 |
| Two or more Autos Insured | 20 |
| Mediation of Claims | 20 |
| Bankruptcy | 20 |
| Declarations | 20 |
| Fraud | 20 |
| Terms of Policy Conformed To Statutes | 21 |

Named insured means a person, usually the owner, including his/her resident spouse, identified in this policy by name as the insured under the policy.

Pedestrian means a person while not an occupant of any self-propelled vehicle.

Owner means a person or organization who holds the legal title to a motor vehicle, and also includes:

   (a)  A debtor having the right to possession, in the event a motor vehicle is the subject of a security agreement; or

   (b)  A lessee having the right to possession, in the event a motor vehicle is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; or

   (c)  A lessee having the right to possession, in the event a motor vehicle is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

Hit-and-Run Vehicle means a motor vehicle whose driver leaves the scene of an accident, especially one in which a pedestrian or another vehicle has been struck.

## PART A
## LIABILITY COVERAGE

We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability has been exhausted.

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of a covered person:

1.  Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations resulting in bodily injury or property damage covered under this policy.

2.  Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3.  Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of a judgment which does not exceed our limit of liability for this coverage.

4.  Up to $50 a day for loss of earnings, but not other income because of attendance at hearings or trials set at our request.

5.  Other reasonable expenses incurred at our request.

### EXCLUSIONS

We do not provide Liability Coverage for:

1.  Any person who intentionally causes property damage or bodily injury to himself or others or while committing a felony. The term felony, in this exclusion, does not mean a felony that solely to a motor vehicle claim.

2.  Any person for damage to property owned or being transported by that person. This exclusion does not apply to damage to any of the following type vehicles not owned by or furnished or available for the regular use of you or any family member:

    a.  private passenger autos;

motor vehicle, as defined by the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while in, on, getting into or out of, or while a pedestrian through being struck by, such commercial motor vehicle.

### CONDITIONS

Notice. In the event of an accident, written notice of the loss must be given to the Company or any of its authorized agents as soon as practicable.

If any injured person or his legal representative shall institute legal action to recover damages for bodily injury against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to the Company by such injured person or his/her legal representative.

### SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

Notwithstanding any provision of this coverage to the contrary, if a person is injured while occupying, or through being struck by a motor vehicle rented or leased under a rental or lease agreement which does not specify otherwise in bold type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

### SECTION II—MODIFICATION OF POLICY COVERAGE

Any automobile medical payments insurance, or any uninsured motorists coverage afforded by the policy shall be excess over any personal injury protection benefits paid or payable or which would be available but for the application of a deductible. Regardless of whether the full amount of personal injury protection benefits have been exhausted, any medical payments insurance afforded by this policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% medical expenses contained in Section I but shall not be payable for the amount of the deductible selected.

### SECTION III—PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorist insurance shall be deemed provisional and subject to re-computation. If this policy is a renewal policy, such re-computation shall also include a determination of the amount of any return premium previously credited or refunded to the Named Insured pursuant to Section 12 (2) (a) of the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy. If the final premium thus recomputed exceeds the premium stated in the Declarations, the Named Insured shall pay to the Company the excess, as well as the amount of any return premium previously credited or refunded.

### SECTION IV—ARBITRATION

Any claim dispute may be resolved through a binding arbitration proceeding held in accordance with the Florida Arbitration Code. Both parties to the arbitration must agree to the use of arbitration. No party may be compelled to arbitration. The arbitration hearing shall be held in the Florida County in which the policy was issued or other location to be agreed upon by the parties.

Amounts paid or payable for the same items of loss and expense under any workers' compensation law.

The deductible is subtracted form the losses and expenses prior to the application of statutory percentage limitations. This will not apply to Death Benefits.

**UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES**

If any injured person incurs medical expenses which we deem to be unreasonable or unnecessary, we will refuse to pay for those medical expenses and contest them.

If the injured person is sued by a medical services provider because we refuse to pay medical expenses which we deem to be unreasonable or unnecessary, we will pay resulting defense costs and any resulting judgment against the insured person. We will choose the counsel. The insured person must cooperate with us in the defense of any claim or lawsuit. If we ask an injured person to attend hearings or trials, we will pay up to $50 per day for loss of wages or salary. We will pay other reasonable expenses incurred at our request.

**ACTION AGAINST OUR COMPANY**

No legal action may be brought against us until there has been full compliance with all the terms of this policy and we have been provided with written notice of intent to initiate litigation. This written notice may not be sent until the claim is overdue pursuant to applicable law. If, within 15 days after receipt of notice by us, the overdue claim specified in the notice is paid by us together with applicable interest and a penalty of 10 percent of the overdue amount paid by us, subject to a maximum penalty of $250, no action may be brought against us.

**PROOF OF CLAIM; MEDICAL REPORTS**

As soon as possible, you or any other person making claim, must give us written proof of claim including all details reasonably required by us to determine the amounts payable.

If the mental or physical condition of an injured person is material to any claim under this coverage, that person may be required to take mental or physical examinations at our request. If an injured person unreasonably refuses to take the examination, we are not required to pay any subsequent Personal Injury Protection benefits. We will pay the expenses of any examinations we request.

Such examination will be conducted in the municipality of the residence of the injured person or in the municipality where the injured person is receiving treatment. If there is no qualified physician to conduct the examination within such municipality, then such examination shall be conducted in an area of the closest proximity to the injured person's residence.

**REIMBURSEMENT AND SUBROGATION**

Unless prohibited by the Florida Motor Vehicle No-Fault Law, as amended, and in the event of payment to or for the benefit of any injured person under this insurance:

1. If the accident occurs outside the state of Florida, the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

2. The Company shall be entitled to reimbursement to the extent of the payment of Personal Injury Protection benefits made under this insurance from the owner or insurer of the owner of a commercial

b.  trailers; or

c.  pick-up, sedan delivery or panel trucks.

3. Any person for bodily injury to an employee of that person during the course of employment. The exclusion does not apply to bodily injury to a domestic employee unless workers' or workman's compensation benefits are required or available for that domestic employee.

4. Any person's liability for bodily injury or property damage arising out of the ownership, maintenance or use of a vehicle while being used to carry persons or property for compensation or a fee, including but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply to shared expense car pools.

5. Any person while employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing or parking of vehicles designed for use mainly on public highways, including road testing and delivery. This exclusion does not apply to the ownership, maintenance or use of your covered auto by you, or any partner, agent or employee of you or any family member.

6. Any person maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation not described in Exclusion 5. This exclusion does not apply to the maintenance or use of a private passenger type auto. It also does not apply to the maintenance or use of a pickup, sedan delivery or panel truck that you own.

7. The ownership, maintenance, or use of a motorcycle or any other self-propelled vehicle having less than four wheels.

8. Any person using any vehicle without a reasonable belief that the person is entitled to do so.

9. Any person for bodily injury or property damage for which that person is an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

11. Bodily injury or property damage sustained by you or your family members.

12. Any damages which are specifically described as punitive or exemplary.

13. Any vehicle while it is being used for or in the course of your employment or occupation, unless you have told us the vehicle is for business use.

14. The ownership, maintenance or use of any vehicle other than your covered auto, which is owned by you or furnished or available for your regular use. However, this exclusion does not apply to the Named Insured while operating a family member's vehicle.

15. Any person's liability assumed by an insured under any contract, agreement or treatment.

16. Any person's liability for bodily injury or property damage resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity or in practice or preparation for any such contest or such activity.

**LIMIT OF LIABILITY**

The limit of liability shown in the Declarations for each person for bodily injury liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for bodily injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for property damage liability is our maximum limit of liability for all damages to all property resulting from any one accident.

## FINANCIAL RESPONSIBILITY

When we certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by the law.

## OTHER INSURANCE

If there is other applicable liability insurance, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for losses arising out of ownership, maintenance or use of a vehicle you do not own shall be excess over any other valid and collectible insurance.

## NONJOINDER OF INSURER

No person who is not an insured under the terms of this policy shall have any interest in this policy, whether as a third party beneficiary or otherwise, prior to first obtaining a settlement of verdict against a person who is an insured under the terms of this policy for a cause of action which is covered by this policy.

## POLICY LIMITS—OUT OF STATE

If you are traveling out of state and the financial responsibility limits for liability are higher than the limits shown in the Declaration Page, we will provide the higher required liability insurance at no additional cost.

## PART B
## MEDICAL PAYMENTS COVERAGE

We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury caused by accident and sustained by a covered person. We will pay only those expenses incurred within 3 years from the date all Personal Injury Protection benefits have been exhausted.

Covered Person as used in this Part means:

1. You or any family member while occupying, or as a pedestrian when struck by a motor vehicle designed for use mainly on public roads or by a trailer of any type.

2. Any other person while occupying your covered auto.

### EXCLUSIONS

We do not provide Medical Payments Coverage for any person for:

1. Bodily injury sustained while occupying a motorcycle or any other motorized vehicle having less than four wheels.

2. Bodily injury sustained while occupying your covered auto when it is being used to carry persons or property for a fee. This exclusion does not apply to a share the expense car pool.

3. Bodily injury sustained while occupying any vehicle located for use as a residence or premises.

4. Bodily injury occurring during the course of employment if workers' or workmen's compensation benefits are required or available for the bodily injury.

5. Bodily injury sustained while occupying or when struck by any vehicle (other than your covered auto) which is owned by you or furnished or available for your regular use.

6. Bodily injury sustained while occupying or when struck by any vehicle (other than your covered auto) which is owned by or furnished or available for the regular use of any family member. However, this exclusion does not apply to you.

7. Bodily injury sustained while occupying a vehicle without a reasonable belief that the person is entitled to do so.

8. Bodily injury sustained while occupying a vehicle when it is being used in the business, or occupation of a covered person. This exclusion does not apply to bodily injury sustained while occupying a private passenger type auto. It also does not apply to

c. (i) for which a premium is charged, or (ii) a trailer designed for use with an auto, or a trailer designed for use with a utility auto.

3. Injured Person means:
   a. Within the State of Florida:
      i. You or a resident relative while in, on, getting into or out of, or struck while a pedestrian by a motor vehicle.
      ii. Any other person struck while a pedestrian by the insured motor vehicle and that person is a resident of Florida.
   a. Outside the State of Florida:
      i. You or a resident relative while in, on, getting into or out of the insured motor vehicle.
      ii. You while in, on getting into or out of a motor vehicle owned by a resident relative for which security is maintained under the Florida Motor Vehicle No-Fault Law.

4. Motor Vehicle means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.

A Motor Vehicle does not include:

a. Any motor vehicle that is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority, or a political subdivision of the state; or

b. A mobile home.

### EXCLUSIONS

This coverage does not apply:

1. To you or any resident relative while in, on, getting into or out of a motor vehicle which you own that is not an insured motor vehicle under this policy.

2. To any person while operating the insured motor vehicle without your permission.

3. To any person whose conduct contributed to a self-injury:
   a. Intentionally caused; or
   b. While committing a felony.

4. To any person, other than you, if that person owns a motor vehicle for which security is required under the Florida Motor Vehicle No-Fault Law.

5. To any person, other than you or a resident relative, who is entitled to no-fault, benefits from the owner or insurer of a motor vehicle which is not an insured motor vehicle under this insurance.

6. To any person who sustains bodily injury while in, on, getting into or out of a motor vehicle while located for use as a residence or premises.

7. To you or a resident relative for Income Loss if the Policy Declarations indicates that Income Loss coverage does not apply.

### LIMITS OF LIABILITY

The Personal Injury Protection limit shown on the Policy Declarations is the maximum we will pay per injured person for any one motor vehicle accident, regardless of the number of vehicles insured under this or other policies. We will pay a $5,000 Death Benefit for any one person.

Benefits will be reduced by:

5

14

## LOSS PAYEE AGREEMENT

Payment for damage to a covered vehicle will be made according to your interest and the interest of any Loss Payee or lienholder shown on the Declarations Page or designated by you.

Where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of you or a relative, the Loss Payee or lienholder's interest will not be protected. We will be entitled to the Loss Payee or lienholder's rights of recovery, to the extent of our payment to this Loss Payee or lienholder.

## OTHER INSURANCE

If other insurance also covers the loss, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

## APPRAISAL

If we and you do not agree on the amount of loss, we may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

We do not waive any of our rights under this policy by agreeing to an appraisal.

## SECTION I
### PERSONAL INJURY PROTECTION COVERAGE

We will pay to or on behalf of the injured person the following benefits. Payments will be made only when bodily injury is caused by an accident arising from the ownership, maintenance, or use of a motor vehicle as a motor vehicle.

1. **Medical Expenses:** Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services. Treatment and services provided in accordance with a recognized religious method of healing are also covered.

2. **Income Loss:** Sixty percent of loss of income and earning capacity from inability to work caused directly by the injury sustained in the auto accident. Income loss benefits end upon the death of the injured person.

3. **Loss of Services:** All reasonable expenses incurred in obtaining from others ordinary and necessary services usually performed by the injured person without income for the benefit of the family or family household. Loss of services benefits end upon the death of the injured person.

4. **Death Benefits:** Benefits due to the death of an injured person.

### ADDITIONAL DEFINITIONS UNDER SECTION I

The following definitions apply throughout Section I of the policy.

1. **Bodily injury** means physical harm to the body, sickness, disease, or death.

2. **Insured Motor Vehicle** means a motor vehicle:
   a. You own, and
   b. For which security is required to be maintained under the Florida Motor Vehicle No-Fault Law; and

bodily injury sustained while occupying a pick-up, sedan delivery or panel truck that you own.

8. Bodily injury caused by discharge of a nuclear weapon (even if accidental), war (declared or undeclared) civil war, insurrection, rebellion, or revolution or any consequence of any of these.

10. Bodily injury to any person who intentionally causes bodily injury to himself or others or while committing a felony. The term felony in this exclusion does not mean a felony due solely to a motor vehicle citation.

11. Bodily injury from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused or any consequence of any of these.

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of where the claim arises, accident occurs, the number of covered persons, claims made, vehicles covered or premiums shown in the Declaration, or vehicles involved in the accident.

Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under any Auto Liability or Uninsured Motorists Coverage provided by this policy.

Also, any payment we make under this coverage to a covered person shall be excess insurance over:

1. benefits paid or payable under the provisions of any disability benefits law or any similar law; or

2. benefits paid or payable under the FLORIDA MOTOR VEHICLE NO-FAULT LAW.

No payment will be made under this coverage unless the injured person or his legal representative agree in writing that any payment shall be applied toward any settlement or judgment that person received under any Auto Liability or Uninsured Motorist Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other valid and collectible auto insurance providing payments for medical or funeral expenses.

## PART C
### UNINSURED MOTORISTS COVERAGE INSURING AGREEMENT

A. Subject to the limitations set forth in paragraph B, we will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
   1. Sustained by an insured; and
   2. Caused by an accident.

B. The compensatory damages we are obligated to pay for the legal liability of an owner or operator of an uninsured motor vehicle shall not include damages for pain, suffering, mental anguish, and inconvenience because of bodily injury unless the bodily injury or disease consists in whole or in part of:
   a. Significant and permanent loss of an important bodily function.
   b. Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
   c. Significant scarring or disfigurement.
   d. Death.

13

5

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

Any judgment for damages arising out of suit brought without our written consent is not binding on us.

C. Insured as used in this Part means:
1. You as defined as covered person under Part A (page 1 of 20 Liability Coverage) of this policy.
2. Family Member as defined as covered persons under Part A (page 1 of 20 Liability Coverage) of this policy.
3. Any other person occupying your covered auto.
4. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1 or 2 above.

D. Uninsured motor vehicle means a land motor vehicle or trailer of any type:
1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. To which no bodily injury liability bond or policy to an insured is enough to pay the full amount the insured is legally entitled to recover as damages.
3. Which is a hit and run vehicle whose operator or owner cannot be identified and which causes an accident resulting in bodily injury without hitting:
   a. you or any family member;
   b. a vehicle which you or any family member are occupying; or
   c. your covered auto.
   If there is no physical contact with the hit and run vehicle, the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.
4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. denies coverage; or
   b. is or becomes insolvent.

However, uninsured motor vehicle does not include any vehicle or equipment:
1. Owned by or furnished or available for the regular use of you or any family member unless it is your covered auto to which Part A of the policy applies and liability coverage is excluded of any person other than you or any family member for damages sustained in the accident by you or any family member.
2. Owned by any governmental unit or agency.
3. Operated on rails or crawlers treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

EXCLUSIONS

A. We do not provide Uninsured Motorist Coverage for bodily injury sustained by any person:
1. If that person or the legal representative settles the bodily injury claim without our consent.
2. While occupying your covered auto when it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.
3. Using a vehicle without a reasonable belief that that person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer under any of the following or similar laws:
1. workers' compensation law; or
2. disability benefits law.

C. We do not provide coverage for punitive or exemplary damages.

7

EMERGENCY TOWING AND
RENTAL REIMBURSEMENT COVERAGE

If you pay a premium for Emergency Towing Reimbursement Coverage, we will pay for the cost incurred by you as a result of the disablement of a covered vehicle, $50.00 per disablement with a $200.00 maximum policy limit, provided that the disablement does not occur at your residence.

If you pay a premium for Rental Reimbursement Coverage, we will reimburse you $20.00 a day with a $300.00 maximum policy limit for rental charges incurred by you when you rent a vehicle from a rental agency or vehicle repair shop due to loss to a covered vehicle, other than total theft. Rental charges will be reimbursed beginning:
1. When the covered vehicle cannot be driven due to loss, or
2. If the covered vehicle can be driven, when you deliver the covered vehicle to a repair shop for repairs due to the loss and ending when the covered vehicle has been repaired, replaced or if the covered vehicle is deemed by us to be a total loss, we pay for the loss.

You must provide us written proof of your rental charges.

Duplicate recovery for identical elements of damages is not permitted under this policy.

LIMIT OF LIABILITY

Our limit of liability for loss will be the lesser of:
1. The actual cash value of the stolen or damaged property but not to exceed $50,000.00.
2. The amount necessary to replace the property but not to exceed $50,000.00. The cost of repair or replacement does not include any reduction in the value of the property after it has been repaired, as compared to its value before it was damaged.
3. The amount necessary to repair the property subject to our determination of declaring the property a total loss.
4. In the event that we determine your vehicle to be a total loss, which determination will be made if the cost of repairs exceeds 80% of the actual cash value at the time of loss, you must immediately release your vehicle to us upon our payment of the loss. In the event your vehicle is a total loss, we will pay up to $10.00 per day not to exceed $100.00 for all storage charges. We reserve the right to retain your vehicle and/or salvage property after we determine that your vehicle is a total loss.
5. We reserve the right to make payment for repair or replacement of property with other property or like kind and quality, and/or parts, supplied by a source other than the manufacturer of your vehicle.
6. We will pay up to $50.00 for towing charge incidental to any one Collision loss and/or any one Comprehensive loss.
7. We will pay up to $15.00 per day for storage charges incident to any one Collision loss and/or any one Comprehensive loss not to exceed a maximum of $150.00 for all such storage charges.

PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may at our expense, return any stolen property to you or to the address shown in this policy. If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee.

12

8. Loss to any vehicle while used as a temporary substitute auto. However, damage to a non-owned vehicle operated by an insured is covered.

9. Loss to TV antennas, awnings, cabanas or equipment designed to create additional living facilities.

10. Loss to any sound receiving or sound receiving and transmitting equipment designed for use as a citizens band radio, two-way radio, telephone or scanning monitor receiver, or their accessories or antennas.

11. Loss to any custom furnishings or equipment in or upon any pick-up, panel truck or van, custom furnishings or equipment including but not limited to special carpeting and insulation, furniture, bars or television receivers, facilities for cooking and sleeping, height-extending roofs, or custom murals, paintings or other decal graphics.

12. Loss to your covered auto while being operated in any prearranged racing or speed contest or in practice or preparation for any such contest.

13. Any loss to your covered auto arising out of or during its commercial use for the transportation of any explosive substance, flammable liquid, or similar hazardous materials, except transportation incidental to your ordinary household or farm activities. This exclusion does not apply to gasoline or oil used to operate your covered auto.

14. Any loss to your covered auto if any person intentionally causes damage while committing a felony. The term felony, in this exclusion, does not mean a felony due solely to a motor vehicle citation.

Coverage is available for equipment not factory installed in or on the insured vehicle. Any equipment options that are not permanently attached to the vehicle are excluded. The maximum coverage is $2,000. A $100.00 deductible applies for each and every loss. Vans, pick-up trucks and utility vehicles and all custom furnishings and equipment in or upon any of these vehicles are not included for coverage unless they are reported to the Company and included in the premium for business use. Loss to your covered auto does not apply while it is being used for or in the course of your employment or occupation unless you have told us the car is for business use, and you have paid the premium for business use.

The following additional equipment will be covered if the Named Insured pays the appropriate premium for such coverage:

1. Special carpeting and insulation.
2. Special roofs and roof treatment, including customized T-Tops, sunroofs, convertible tops, and/or customized non-factory vinyl-tops.
3. AM/FM Stereo (must be permanently installed with a $1,000 maximum value).
4. CB Radio (must be in the dash).
5. Headset.
6. Side pipes.
7. Chrome, alloy, mag-type, wire wheels, or any custom wheel coverings, racing tires or tires wider than those installed as original factory equipment, (not factory installed).
8. Recovered seats, leather seats or velvet seats.
9. All other equipment not permanently installed in the car, pick-up or van.
10. Stereos or CB radios in convertibles.

The insured will be required to maintain and present proof of purchase along with proper installation certificate. The insured must list all equipment to be covered on inspection, with the value of each item.

D. If Unstacked Limits are provided as described below, the uninsured motorist coverage provided by the policy does not apply to the named insured or family member residing in her or his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.

LIMIT OF LIABILITY

A. Stacked Limits. If the description of Uninsured Motorists coverage on the Declarations is identified as being "stacked", the maximum limit of our liability for Uninsured Motorists Coverage in any one accident is the sum of the Uninsured Motorists Coverage limits per accident identified for all motor vehicles shown in the Declarations and subject to this per accident limitation, the maximum limit of our liability for each person for Uninsured Motorists Coverage in any one accident is the sum of the limits shown for the Uninsured Motorists Coverage limits per person identified for all motor vehicles shown in the Declarations.

Unstacked Limits. If the description of Uninsured Motorists coverage on the Declarations is identified as being "unstacked", the maximum limit of our liability for Uninsured Motorists Coverage in any one accident is the amount shown for the Uninsured Motorists Coverage limits per accident identified for any one motor vehicle shown in the Declarations and subject to this per accident limitation, the maximum limit of our liability for each person for Uninsured Motorists Coverage in any one accident is the amount shown for the Uninsured Motorists Coverage limits per person identified for any one motor vehicle shown in the Declarations. In no event will these limits be "stacked" or summed.

Under Unstacked Limits, if the injured person is occupying a motor vehicle which is not owned by her or him or by a family member residing with her or him, the injured person is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which she or he is a named insured or insured family member. Such coverage shall be excess over the coverage on the vehicle the injured person is occupying.

Further under Unstacked Limits, if, at the time of the accident the injured person is not occupying a motor vehicle, she or he is entitled to select any one limit of uninsured motorist coverage for any one vehicle afforded by a policy under which she or he is insured as a named insured or as an insured resident of the named insured's household.

These limitations are the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. Any coverage afforded under this endorsement shall apply over and above any amounts available to an insured because of bodily injury:
1. From or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.
2. Under any of the following:
   a. Workers' compensation law;
   b. Disability benefit law or similar law; or
   c. Automobile medical payments coverage.

C. Any payment under this coverage will reduce any amount that person is entitled to recover for the same element of loss under Part A of the policy.

D.   In no event will an insured be entitled to receive duplicate payment for the same element of loss.

### OTHER INSURANCE

If there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other valid and collectible insurance.

### DISPUTES CONCERNING UNINSURED MOTORIST CLAIMS

If a covered person or, in the case of death, his/her personal representative agrees to settle a claim with a liability insurer and its insured for the limits of liability, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim against us, then such settlement agreement shall be submitted in writing to us, and, we shall have a period of 90 days from receipt thereof in which to agree to an arbitration, (as defined below), underinsured motorist claim and approve the settlement, waive our subrogation rights against the liability insurer and its insured; and authorize the execution of a full release.

If we do not agree within 90 days to arbitrate the underinsured motorist claim, and approve the proposed settlement Agreement, waive our subrogation rights against the liability insurer and its insured, and authorize the execution of a full release, the covered person or, in case of death, his/her personal representative may file suit joining the liability insureds and us to resolve the respective liability for any damages to be awarded; however, in such action, the liability insurer's coverage, shall first be exhausted before any award may be entered against us, and any such award against us shall be excess.

If we, and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle, or do not agree as to the amount of damages, the matter will be decided by a court of competent jurisdiction. Any judgment against the uninsured motorist will be binding against us only if we were named as a party defendant.

### ARBITRATION

A.   If we and an insured do not agree:
1.   Whether that person is legally entitled to recover damages under this Part; or
2.   As to the amount of damages; then the matter may be arbitrated. However, both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third arbitrator. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.
3.   Each party will:
   1.   Pay the expenses it incurs, and
   2.   Bear the expenses of the third arbitrator equally.
4.   Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators, will be binding as to whether the insured is legally entitled to recover damages.

### PART D
### COVERAGE FOR DAMAGE TO YOUR AUTO

We will pay for loss to your covered auto, including its original factory installed equipment, minus the deductible shown in the Declarations. Loss does not include any reduction in the value of any vehicle or

detachable living quarters after it has been repaired, as compared to its value before it was damaged. The Comprehensive deductible of this Policy shall not apply to loss to the Windshield of your covered auto. A "Windshield" is defined as the glass protective structure located in the front portion of your covered auto. Comprehensive means: Loss other than by collision. Examples of perils covered include: fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, or contact with a bird or animal, although this list is not inclusive. We will pay for loss caused by Comprehensive coverage only if the Declarations indicate that Comprehensive Coverage is afforded. We will pay for loss to your covered auto, including original factory installed equipment, minus the deductible shown in the Declarations. We will pay for loss caused by Collision only if the Declarations indicate the Collision Coverage is afforded. Collision means: the upset of, or impact with another object, of your covered auto.

### TRANSPORTATION EXPENSES

In addition, we will pay up to $10 per day, to a maximum of $300 for transportation expenses incurred by you. This applies only in the event of the total theft of your covered auto. We will pay only transportation expenses incurred during the period:
1.   Beginning 48 hours after the theft, and
2.   Ending when your covered auto is returned to use or we pay for its loss.

We will not pay you the cost of renting a car from an individual. The car must be rented from a business whose day-to-day operations involve car rental.

### EXCLUSIONS

We will not pay for:
1.   Loss to Your covered auto while it is being operated by anyone other than You, unless the driver has been reported to the Company and accepted as an Additional Driver as defined on Page 2. You have a period of 30 days from the date a new household member takes residence in which to add the licensed permanent resident of your household as an Additional Driver.
2.   Loss to your covered auto, which occurs while it is used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.
3.   Damage due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, road damage to tires, unless such damage results from a theft covered by this policy.
4.   Loss due to radioactive contamination, discharge of any nuclear weapon (even if accidental), war, (declared or undeclared) civil war, insurrection, rebellion or revolution or any consequence of any of these.
5.   Loss to equipment designed for all reproduction of sound including but not limited to compact disk players, unless the equipment is factory installed as original equipment or dealer installed, using factory equipment, in your covered auto. If the damaged equipment is no longer available from the manufacturer of the vehicle, the dealer is permitted to recommend retail audio equipment to perform the repair or replacement of equal or like kind.
6.   Loss to tapes, records, compact disks or other devices for use with equipment designed for the reproduction of sound.
7.   Loss to a camper body or trailer not shown in the Declarations. This exclusion does not apply to a camper body or trailer of which you acquire ownership during the policy period. If you want us to insure it, notice must be sent to us within thirty days after you become the owner.

9

10

## PERSONAL AUTO POLICY--
## OUTLINE OF COVERAGE

The following outline of coverage is for informational purposes only. It is the express intent of §. 27.4143, Florida Statutes, that this outline shall not be construed to modify any of the provisions of the legal insurance contract which is the subject of this outline. READ YOUR PERSONAL AUTO POLICY CAREFULLY.

### POLICY COVERAGES

The declarations page of your policy lists the principal coverages selected. You have those for which a premium charge is shown. These and other available coverages are described below:

**Liability Coverage:** This covers your legal liability for bodily injury to others (Bodily Injury Liability) or damage to their property (Property Damage Liability). Florida law requires you to have Property Damage Liability coverage. The principal exclusions (items not covered by your policy) for this coverage are: [1] autos owned by you or furnished or available for the regular use of you or your family members, which have not been specifically covered under the policy, [2] vehicles with less than 4 wheels, and [3] claims for injuries to family members.

**Personal Injury Protection:** This covers you, your family members and certain others, for bodily injuries resulting from auto accidents, without regard to fault. Payments are for 80% of medical expenses, 60% for loss of income, (if the limit has not been exhausted by other benefits) a death benefit. Personal Injury Protection is also required under Florida law. The principal exclusions for this coverage are injuries sustained in autos you or family members own which have not been specifically covered under the policy, and injuries to other vehicle owners required by law to have their own coverage.

**Exclusion of Work Loss:** The option excludes Loss of Income Coverage from Basic Personal Injury Protection.

**Medical Payments Coverage:** This coverage supplements the medical expense reimbursement of PIP coverage and provides basic coverage in situations where PIP does not pay. The principal exclusions are similar to those for liability coverage.

**Uninsured Motorists Coverage:** This coverage pays for bodily injuries to you, family members and

certain others, resulting from the negligence of others. It pays when the at-fault party has: no liability insurance, or liability coverage with limits not adequate to pay for the damages incurred, or if injuries result from a hit-and-run vehicle. Your coverage may be "Stacked" or "Non-stacked." The principal difference between these two forms is that the total amount of protection under the stacked form is the sum of the limits applicable to each vehicle insured, whereas under the non-stacked form the limit stated applies per accident regardless of how many vehicles you own or insure.

**Collision:** This covers damage to your car resulting from upset or impact with another object.

**Comprehensive** provides coverage for damage to your car resulting from fire, theft and other direct losses not excluded. The principal exclusions are for damage to certain electronic and sound equipment; tapes and other media; radar detectors; undeclared camper bodies; and van or pickup customized equipment.

**Emergency Towing Coverage:** This coverage may apply for vehicles that carry comprehensive and collision.

**Rental Reimbursement Coverage:** Rental reimbursement coverage may be purchased for any vehicle covered by comprehensive or collision.

**Other Coverages:** In addition, your policy may contain other endorsements which add or broaden coverage, as indicated by their titles. The principal endorsements which may be found are towing and labor costs; extended transportation expenses; coverage for audio, visual and data electronic equipment; tapes, records, discs and other media; customizing equipment coverage.

**Renewal and Cancellation Provisions:** You may cancel your policy at any time. Under conditions where the law permits us to cancel or refuse renewal of your policy, we must give you advance notice as follows: [1] 10 days for cancellation because of nonpayment of premium; [2] 45 days for cancellation for any other reason; [3] 45 days if we refuse to renew.

**Premium Credits and Surcharges:** Credits and/or Surcharges which apply to you will be disclosed on the declarations page.

ASI-OOC (FL 11/05

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
GENERAL CIVIL LAW DIVISION

ROBERT D. THOMPSON,

    Plaintiff,

vs.

KAREN L. WATSON,

    Defendant.

CASE NO.:  08-00915

DIVISION:  F

### FINAL JUDGMENT AGAINST DEFENDANT, KAREN L. WATSON

Pursuant to the verdict rendered in this action and the agreement of the parties,

IT IS ADJUDGED that Plaintiff, Robert Thompson, 11940 N. US 301, Lot 50, Thonotosassa, Florida 33592, recover from Defendant, Karen Watson, 7447 Burnt Barn Avenue, Plant City 33561, the sum of Four Hundred Eighty One Thousand Dollars ($481,000.00), the amount awarded by the jury, together with the sum of Three Hundred Thirty Thousand Five Hundred Thirty Three Dollars and Thirty Five Cents ($330,533.35), the amount stipulated by the parties to represent Plaintiff's past medical expenses, for a total sum of Eight Hundred Eleven Thousand Five Hundred Thirty Three Dollars and Thirty Five Cents ($811,533.35), that shall bear interest at the rate of 8% a year, for which let execution issue.

The Court reserves jurisdiction to enter further Orders that are proper.

DONE AND ORDERED in chambers at Hillsborough County, Florida, on this _____ day of _____, 2009.

CIRCUIT COURT JUDGE

Copies provided to:

Lee D. Gunn IV, Esquire
Barbi L. Feldman, Esquire

ORIGINAL SIGNED
CONFORMED COPY

DEC 08 2009

CHARLES ED BERGMANN
CIRCUIT JUDGE

EXHIBIT B

 **FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**


Alex Sink
Chief Financial Officer of Florida

## Civil Remedy Notice of Insurer Violations

| | | | |
|---|---|---|---|
| Filing Number: | 113039 | Outcome of Notice: | |
| Filing Accepted: | 5/20/2008 | Date Outcome Entered: | |

Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | ROBERT THOMPSON |
| Street Address: | 11940 N. US 301, LOT 50 |
| City, State Zip: | THONOTOSASSA, FL 33592 |
| Email Address: | |
| Complainant Type: | Third Party |

### Insured

| | |
|---|---|
| Name: | KAREN WATSON |
| Policy #: | 33140000796-1 |
| Claim #: | 33CAFL |

### Attorney

| | |
|---|---|
| Name: | KELLY K GRAY, ESQ. |
| Street Address: | GUNN LAW GROUP, P.A., 777 S. HARBOUR ISLAND BLVD, #765 |
| City, State Zip: | TAMPA, FL 33602 |
| Email Address: | KGRAY@GUNNLAWGROUP.COM |

### Notice Against

| | |
|---|---|
| Insurer Type: | Authorized Insurer |
| Name: | AMERICAN SERVICE INSURANCE COMPANY |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

ANNE STOLZMAN, DON SANTO, MANAGERS, SUPERVISORS, POLICY MAKERS

| | |
|---|---|
| Type of Insurance: | Auto |

DFS-10-363
Rev. 11/2007

*EXHIBIT C*

 **FLORIDA** DEPARTMENT OF **FINANCIAL SERVICES**



Alex Sink
Chief Financial Officer of Florida

## Civil Remedy Notice of Insurer Violations

Filing Number:   113039

### Reason for Notice

Reasons for Notice:

Claim Delay

Unsatisfactory Settlement Offer

Unfair Trade Practice

PURSUANT TO SECTION 624.155, F.S. please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| 624.155(1)(b)(1) | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests. |
| 624.155(1)(b)(2) | Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made. |
| 626.9541(1)(i)(3)(a) | Failing to adopt and implement standards for the proper investigation of claims with such frequency as to indicate a general business practice. |
| 626.9541(1)(i)(3)(b) | Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue with such frequency as to indicate a general business practice. |
| 626.9541(1)(i)(3)(c) | Failing to acknowledge and act promptly upon communications with respect to claims with such frequency as to indicate a general business practice. |
| 626.9541(1)(i)(3)(d) | Denying claims without conducting reasonable investigations based upon available information with such frequency as to indicate a general business practice. |
| 626.9541(1)(i)(3)(e) | Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed with such frequency as to indicate a general business practice. |
| 626.9541(1)(i)(3)(f) | Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement with such frequency as to indicate a general business practice. |
| 626.9541(1)(i)(3)(g) | Failing to promptly notify the insured of any additional information necessary for the processing of a claim with such frequency as to indicate a general business practice. |
| 626.9541(1)(i)(3)(h) | Failing to clearly explain the nature of the requested information and the reasons why such information is necessary with such frequency as to indicate a general business practice. |

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**AMERICAN SERVICE INSURANCE COMPANY AGREED TO PAY UP TO ITS LIMITS OF LIABILITY FOR BODILY INJURY AND PROPERTY DAMAGE FOR WHICH KAREN WATSON WAS AND IS LIABLE TO COMPLAINANT.**

To enable the insurer to investigate and resolve your claim, briefly describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

AMERICAN SERVICE INSURANCE COMPANY FAILED TO FULLY PROACTIVELY AND TIMELY INVESTIGATE THIS CLAIM AND MAKE AVAILABLE ITS APPLICABLE LIABILITY LIMITS TO SETTLE THIS CLAIM WHEN IT COULD AND SHOULD HAVE DONE SO, AND FAILED AS A GENERAL BUSINESS PRACTICE TO HAVE IN PLACE PROCEDURES FOR THE PROPER INVESTIGATION, EVALUATION AND RESOLUTION OF CLAIMS AGAINST ITS INSURED.  AMERICAN SERVICE INSURANCE COMPANY CAN CURE THESE VIOLATIONS BY AGREEING TO PAY THE FULL VALUE OF COMPLAINANT'S CLAIMS AGAINST KAREN WATSON AS WILL BE DETERMINED IN THE LITIGATION NOW PENDING AGAINST KAREN WATSON FOR THE INJURIES AND DAMAGES SUSTAINED BY COMPLAINANT.